UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| NOAH FORD,<br><br>                 Plaintiff,<br><br>     v.<br><br>I.Q. DATA INTERNATIONAL, INC., et al.,<br><br>                 Defendants. | C22-1791 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on the motion for summary judgment, docket no. 73, brought by defendants I.Q. Data International, Inc. ("I.Q. Data") and Kris Graafstra.  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiff Noah Ford challenges the debt collection practices of defendants I.Q. Data and Graafstra.[1]  The debt underlying this lawsuit arose from Ford's purported

---

[1] The parties spend several pages briefing the origins of Ford's debt.  I.Q. Data was not the original creditor and received the debt on assignment from the original creditor.  *See* McClain Decl. at ¶¶ 7–11 (docket no. 76).  Disputes about the debt's validity or origin are not relevant to the course of conduct

ORDER - 1

breaking of an apartment lease with Tanjent Multifamily Vertical, L.P. ("Tanjent"). *See* McClain Decl. (on behalf of Shea Properties Management Company, Inc.) at ¶¶ 4, 7–11 (docket no. 76) [hereinafter "Shea Prop. Decl."). Shea Properties Management Company, Inc. ("Shea Properties"), the contracted property manager for Tanjent, *id.* at ¶ 4, assigned Ford's debt to I.Q. Data on November 4, 2021. *Id.* at ¶ 11. The amount of debt originally assigned was $33,547.59. *Id.* I.Q. Data, which is based in and communicated with Ford from Washington, sent Ford an initial demand letter on November 5, 2021. Gulbranson Decl. (on behalf of I.Q. Data) at ¶ 7 (docket no. 74) [hereinafter "I.Q. Data Decl."]; *see id.* at Ex. 7 (docket no. 74-3).

On December 14, 2021, I.Q. Data furnished information about Ford's debt to the three major credit reporting agencies (collectively, "CRAs"): Experian, Equifax, and Transunion. *Id.* at ¶ 9 (docket no. 74). On December 16, 2021, the initial demand letter was returned to I.Q. Data, marked as undeliverable. *Id.* at ¶ 10. Also on December 16, 2021, I.Q. Data received a phone call from an attorney purporting to represent Ford to dispute the debt. *Id.* at ¶ 11; Graafstra Decl. at ¶ 3 (docket no. 75); *see also* Ex. 8 to I.Q. Data Decl. (docket no. 74-4). Ford was not on the call; the only participants were Ford's attorney and I.Q. Data's employee, Kris Graafstra. *See* I.Q. Data Decl. at ¶ 11 (docket no. 74); Graafstra Decl. at ¶ 3–4 (docket no. 75). The same day, in response to the phone call, I.Q. Data reported to the CRAs that the debt was disputed. I.Q. Data Decl. at ¶ 13

---

between I.Q. Data and Ford. *Cf. Transamerica Fin. Servs., Inc. v. Sykes*, 171 F.3d 553, 555–56 (7th Cir. 1999). The Court limits its review of the facts accordingly.

ORDER - 2

(docket no. 74). The debt's disputed status with the CRAs continues to this day. *Id.* On December 20, 2021, I.Q. Data sent Ford a second initial demand letter, mailing it to the new address provided by Ford's attorney during the December 16 phone call. *Id.* at ¶ 13. This letter demanded $34,349.06, including $801.47 in interest.[2] *Id.* at Ex. 9 (docket no. 74-5). I.Q. Data states that the amount of interest on the account at the time was actually $818.01. Defs.' Mot. at 8 (docket no. 73).[3]

On January 5, 2022, Graafstra directed that the documents supporting the debt be sent to Ford. Graafstra Decl. at ¶ 5 (docket no. 75). The letter accompanying the documents, which was dated January 6, 2022, demanded $34,474.05, including $926.46 in interest. *Id.* at Ex. 11 (docket no. 75-2). I.Q. Data states in the motion for summary judgment that the amount of interest on the debt at this time was actually $974.26. Defs.' Mot. at 8 (docket no. 73).

Shea Properties twice revised the principal balance of Ford's debt. First, on February 22, 2022, Shea Properties revised the debt from $33,547.59 to $12,876.91 because the apartment had been released. I.Q. Data Decl. at ¶ 19 (docket no. 74); Shea Prop. Decl. at ¶ 14 (docket no. 76). Second, on June 29, 2022, Shea Properties revised the principal balance from $12,876.91 to $12,215.38 because an audit had discovered that

---

[2] The lease underlying the debt specifies that the interest rate for any unpaid portion of the lease will be ten percent (10%) compounded annually. *See* Lease Agr. at ¶ 40, Exs. 1 & 2 to Shea Prop. Decl. (docket nos. 76-1 & 76-2).

[3] To the extent the Court relies on facts in the motion for summary judgment, it does so because Ford did not dispute such facts, and they will be considered true for purposes of the motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

ORDER - 3

1  Ford's account had been double billed for a carpet repair.  I.Q. Data Decl. at ¶ 34 (docket
2  no. 74); Shea Prop. Decl. at ¶ 15 (docket no. 76).  I.Q. Data updated the principal balance
3  of the debt with the CRAs in response to each revision.  I.Q. Data Decl. at ¶¶ 19 & 34
4  (docket no. 74).

5       Beyond updating the debt after each revision from Shea Properties, I.Q. Data also,
6  at multiple other points in 2022, reported to the CRAs the amount due on the debt.  *See*
7  Exs. 18, 20, 21, & 22 to Hasson Decl. (docket nos. 77-1, 77-3, 77-4, & 77-5).  I.Q. Data
8  states that the amounts reported to the CRAs on May 17, 2022, July 20, 2022, September
9  24, 2022, and October 22, 2022, were different from the amounts actually due on the debt
10 at the time those reports were made.  *See* Defs.' Mot. at 8–10 (docket no. 73).

11      Ford has disputed the debt throughout the time it has been assigned to I.Q. Data.
12 In addition to the December 16, 2021, phone call, I.Q. Data received multiple letters from
13 Ford contesting the debt.  *See* I.Q. Data Decl. at ¶¶ 15, 17, 20, & 28 (docket no. 74).
14 Ford also repeatedly disputed the debt with each of the CRAs.  *See id.* at ¶¶ 21, 24, 26,
15 29,  31, & 33.  I.Q. Data investigated each dispute by reviewing documents that
16 purportedly showed Ford's liability and reported the results of these investigation to the
17 CRAs.  *See id.* at 18, 22, 25, 27, 30, 32, & 35.  Ford's efforts to dispute the debt
18 culminated in the filing of the instant case on December 16, 2022.

19
20
21
22
23

ORDER - 4

**Discussion**

**A.     Summary Judgment Standard[4]**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B.     Consumer Protection Act and Collections Agency Act Claims**

I.Q. Data argues that Ford's Washington Consumer Protection Act ("CPA") and Washington Collection Agency Act ("CAA") claims must be dismissed because the debt

---

[4] Ford's response to the motion for summary judgment was untimely. I.Q. Data and Graafstra initially argued that their motion should be granted as unopposed. *See* Reply (docket no. 98) The Court accepted Ford's untimely response and granted I.Q. Data and Graafstra leave to file a supplemental reply. *See* Minute Order (docket no. 103). When a summary judgment motion is unopposed, the Court may consider any asserted facts as undisputed. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). What the Court cannot do is grant a summary judgment motion as unopposed; Rule 56 requires the Court to always ensure that the movant is entitled to summary judgment. *See id.* at 916–17. With this requirement in mind, the Court has considered the instant motion.

ORDER - 5

underlying this litigation was incurred in Colorado and, therefore, Colorado law must govern this dispute.[5]  I.Q. Data is a Washington corporation doing business in Washington.  Although it did direct communications to Ford in Colorado, I.Q. Data sent those communications from Washington.

I.Q. Data asks the Court to make a choice of law determination.  Under Washington law, because I.Q. Data is the party asserting that a state's law other than Washington's law should govern these claims, I.Q. Data bears the burden to show that a choice of law analysis is required.  *GM Northrup Corp. v. Mass. Bay Ins. Co.*, 662 F. Supp. 3d 1180, 1187 (W.D. Wash. 2023).  I.Q. Data does not carry that burden.  It instead relies solely on an unpublished disposition of the Ninth Circuit to support the assertion that Washington law is inapplicable to this case.  The case on which I.Q. Data relies, *Thornell v. Seattle Service Bureau, Inc.*, 742 F. App'x 189 (9th Cir. 2018) [hereinafter "*Thornell 2*"], concluded in a 2-1 memorandum disposition that Texas law and not Washington law should apply to a debt collection case.  Unpublished Ninth Circuit opinions are persuasive authority but are not controlling on this Court.  *See* 9th Cir. Rule 36-3.  The Court finds the *Thornell 2* dissent more persuasive than the majority opinion.

---

[5] "The CAA does not itself provide a cause of action.  Instead, because actions prohibited under the CAA are declared unfair acts or practices under the CPA, a violation of the CAA constitutes a per se violation of the CPA." *Williams v. Columbia Debt Recovery, LLC*, No. C20-1718, 2021 WL 1063330, at *4 (W.D. Wash. Mar. 19, 2021) (citing *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53–54, 204 P.3d 885 (2009), and RCW 19.16.440).  Accordingly, the Court will analyze Ford's CAA claim as part of his CPA claim.

ORDER - 6

Washington law recognizes that the state's "interest in preventing financial burdens and exaggerated claims is primarily local." *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 582–83, 555 P.2d 997 (1976). The CPA "shall be liberally construed," RCW 19.86.920, "and the legislative purpose and provisions of the CPA contemplate extraterritorial application," *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 803, 363 P.3d 587 (2015) [hereinafter "*Thornell 1*"]. A "broad reading of the CPA is also consistent with [the Washington Supreme Court's] established recognition that the CPA's reach extends beyond Washington's boundaries." *Id.* at 801. To that end, in *Thornell I*, the Washington Supreme Court held that a CPA action can be brought by "an out-of-state plaintiff against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington." *Id.* at 803. Because I.Q. Data does business in Washington, its unfair or deceptive acts affect the people of Washington, *see id.* at 800, and can be the subject of a CPA claim by an out-of-state plaintiff. Accordingly, I.Q. Data's motion is DENIED as to Ford's CPA and CAA claims.

C.     **Fair Debt Collection Practices Act Claim**

I.Q. Data originally moved for summary judgment on the entirety of Ford's Fair Debt Collection Practices Act ("FDCPA") claim. I.Q. Data has since withdrawn its motion as to Ford's claims that I.Q. Data demanded an amount from Ford different from what he actually owed. Defs.' Reply at 2–3 (docket no. 105). I.Q. Data also concedes that it has not presented evidence to establish the bona fide error defense at this stage of the case. *Id.* at 3. Because the December 20, 2021, and January 6, 2022, letters

ORDER - 7

demanded an amount from Ford different from what he actually owed, the motion for summary judgment is DENIED as to those letters.

With respect to Ford's claim that the December 16, 2021, phone call violated the FDCPA, I.Q. Data's motion for summary judgment is GRANTED.  The call was solely between Graafstra and the attorney representing Ford.  "[C]ommunications directed solely to a debtor's attorney are not actionable under the" FDCPA.  *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

The motion for summary judgment is also GRANTED as to any claim that I.Q. Data violated 15 U.S.C. § 1692e(8) by failing to report to the CRAs that the debt was disputed.  I.Q. Data made the requisite report to the CRAs on December 16, 2021, the same day that it received the initial phone call from Ford's attorney disputing the debt.  *See* I.Q. Data Decl. at ¶¶ 11 & 13 (docket no. 74).

**D.     Fair Credit Reporting Act Claim**

I.Q. Data moves for summary judgment on Ford's Fair Credit Reporting Act ("FCRA") claim.  Ford alleges that I.Q. Data violated the FCRA by failing to conduct reasonable investigations in response to Ford's filing of disputes with the CRAs.  I.Q. Data is the entity that reported Ford's debt to the credit reporting agencies and is therefore a "furnisher" under the FCRA.  *See* 12 C.F.R. § 1022.41(c).  Before the Court can consider the reasonableness of I.Q. Data's investigations, Ford must first "make a 'prima facie' showing of inaccuracy in [I.Q. Data's] reporting."  *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citations omitted).  I.Q. Data states in its motion that it reported to credit reporting agencies that Ford owed an amount different

1  than what was actually due at the time of the reports.  *See* Defs.' Mot. at 8–10 (docket no.
2  73).  Because I.Q. Data states that it reported inaccurate amounts to the CRAs, the Court
3  finds that a prima facie case of inaccuracy has been made.

4      The next step in the analysis is the evaluation of the reasonableness of I.Q. Data's
5  investigation.  *See Gross*, 33 F.4th at 1252–53.  To be reasonable, I.Q. Data's
6  investigations must have been "non-cursory."  *Gorman v. Wolpoff & Abramson, LLP*,
7  584 F.3d 1147, 1157 (9th Cir. 2009).  "Courts have also identified several factors that
8  inform the reasonableness analysis, including: the furnisher's relationship to the debt and
9  to the consumer; the level of detail in the credit reporting agency's notice of dispute; and
10 the feasibility of implementing investigatory procedures, including training staff."  *Gross*,
11 33 F.4th at 1253 (citations omitted).  The reasonableness analysis also "depends 'on the
12 nature, size, complexity, and scope'" of I.Q. Data's activities.  *Id.* (citing 12 C.F.R.
13 § 1022.42(a)).  Because I.Q. Data is a furnisher, its "investigatory obligations will often
14 be more extensive and more thorough" than those of a credit reporting agency and may
15 include the obligation to investigate legal as well as factual issues.  *See id.*  "Unless 'only
16 one conclusion about the conduct's reasonableness is possible,' the question is normally
17 inappropriate for resolution at the summary judgment stage."  *Id.* at 1252 (quoting
18 *Gorman*, 584 F.3d at 1157).

19     I.Q. Data argues that its investigations were reasonable because it reviewed
20 various documents in response to receiving the dispute notices from the CRAs.  I.Q.
21 Data's motion fails to address its policies regarding investigations, whether the
22 investigations here complied with those policies, who conducted the investigations, how
23

ORDER - 9

long that person or persons spent conducting the investigations, or whether the investigations were anything more than cursory. Given the repeated inaccuracies in I.Q. Data's reports to the CRAs and the lack of information about the conduct of the investigations, material issues of fact preclude summary judgment on this issue. Accordingly, I.Q. Data's motion is DENIED as to Ford's FCRA claim.

E.   **Fraud Claim**

I.Q. Data argues that Ford's fraud claim must be dismissed because no evidence in the record shows that it knew the debt was fraudulent or that Ford incurred damages in reliance on any allegedly fraudulent statement.[6] The elements of fraud include:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Adams v. King County*, 164 Wn.2d 640, 662, 192 P.3d 891 (2008) (citation omitted). No evidence in the record establishes that Ford was damaged by his reliance on any allegedly fraudulent statements from I.Q. Data. When Ford first received notice of the debt from I.Q. Data, he did not make any payments. Instead, Ford contacted an attorney and had that attorney call I.Q. Data on his behalf on December 16, 2021. The December 16, 2021, phone call was the first in a string of actions taken by Ford to dispute the debt, which culminated in this lawsuit. Ford has made no payments on the debt, *see* Shea

---

[6] Because reliance is required under both Washington and Colorado law, the Court declines to address I.Q. Data's choice of law argument. *See Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116 (Colo. App. 2010).

ORDER - 10

1  Prop. Decl. at ¶ 16 (docket no. 76), and the closest he might come to damages is any
2  attorney's fees he incurred in bringing this suit.  Attorney's fees, however, are not
3  available as damages for a fraud claim.  *See, e.g.*, *Burbo v. Harley C. Douglass, Inc.*, 125
4  Wn. App. 684, 702, 106 P.3d 258 (2005) (citing *Norris v. Church & Co.*,
5  115 Wn. App. 511, 517, 63 P.3d 153 (2002)); *see also Bernhard v. Farmers Ins. Exch.*,
6  915 P.2d 1285, 1287–91 (Colo. 1996) (discussing when attorney's fees are available as
7  damages under Colorado law).  Ford is unable to establish an essential element of his
8  fraud claim.  Accordingly, I.Q. Data's motion is GRANTED as to Ford's fraud claim,
9  and this claim is DISMISSED.

10  **F.     Claims Against Graafstra**

11         Graafstra seeks summary judgment on the separate contention that no facts in the
12  record support personal liability against him.  The evidence in the record, however,
13  shows that Graafstra was involved in the collection activities undergirding Ford's
14  statutory claims.  *See* Graafstra Decl. at ¶¶ 3 & 5 (docket no. 75); I.Q. Data Decl. at ¶ 16
15  (docket no. 74).  This evidence is sufficient to create a genuine dispute of material fact as
16  to Graafstra's liability under the CPA, FDCPA, and FCRA.  *Cf. Anderson*, 477 U.S. at
17  255 (stating that "all justifiable inferences [are] to be drawn in [the non-movant's] favor"
18  (citation omitted)).  The fraud claim against Graafstra will, however, be dismissed for the
19  reasons stated earlier.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant I.Q. Data International, Inc.'s and Kris Graafstra's motion for summary judgment, docket no. 73, is GRANTED in part and DENIED in part as follows:

    (a) The motion is GRANTED as to Ford's fraud claims, Am. Compl. at ¶¶ 116–25 (docket no. 6), and those claims are DISMISSED.

    (b) The motion is GRANTED as to (i) Ford's allegation that the December 16, 2021, phone call violated the FDCPA, and (ii) Ford's allegation that I.Q. Data did not report the debt's disputed status to the CRAs.

    (c) The motion is DENIED as to all other theories and claims. The claims remaining for trial are Ford's CPA/CAA claims, *id.* at ¶¶ 132–37, Ford's Fair Credit Reporting Act claim, *id.* at ¶¶ 126–31, and the portion of Ford's Fair Debt Collection Practices Act claim premised on the inaccuracies in the December 20, 2021, and January 6, 2022, letters, *id.* at ¶¶ 113–15.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 19th day of March, 2024.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 12