UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NOAH FORD,

    Plaintiff,

v.

I.Q. DATA INTERNATIONAL, INC., et al.,

    Defendants.

C22-1791 TSZ

ORDER

THIS MATTER comes before the Court on the second motion for summary judgment, docket no. 122, brought by defendants I.Q. Data International, Inc. ("I.Q. Data") and Kris Graafstra.  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**<u>Background</u>**

This case arises from defendant I.Q. Data's efforts to collect a debt assigned to it from Shea Properties Management Company, Inc. ("Shea Properties"), on behalf of Tanjent Multifamily Vertical, L.P., and allegedly owed by plaintiff Noah Ford.  Ford originally alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), Fair Credit Reporting Act ("FCRA"), the Washington Consumer Protection Act ("CPA"), and

ORDER - 1

a state law fraud claim against both I.Q. Data and Graafstra.  I.Q. Data and Graafstra previously moved for summary judgment, *see* Defs' First Mot. (docket no. 73), and the Court granted their motion in part and denied it in part, *see* Order at 12 (docket no. 110).  The Court dismissed Ford's fraud claims and some of his FDCPA and FCRA claims.  *Id.*  Ford's CPA claims, and some of his FDCPA and FCRA claims, survived that attempt at summary judgment.

The facts of the case have remained largely unchanged since the Court's prior Order, and those facts are incorporated herein.  *See id.* at 1–4.  The key factual development since the Court's previous Order is that, prior to his deposition, Ford had never seen the December 20, 2021, letter (the "December 2021 letter") sent to him by I.Q. Data.  Ford. Tr. at 109:16–110:11, Ex. 24 to Hasson Decl. (docket no. 125 at 3–26).

**Discussion**

A.   **Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the

ORDER - 2

non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B.    I.Q. Data**

    **1.    Fair Credit Reporting Act**

The Court previously declined to grant summary judgment in I.Q. Data's favor on Ford's FCRA claim. *See* Order at 12 (docket no. 110). The Court found that in light of the admitted inaccuracies in I.Q. Data's reports to the major credit reporting agencies ("CRAs"), and drawing inferences in favor of Ford, there were disputes of material fact as to whether I.Q. Data's investigation was reasonable. *Id.* at 8–10. I.Q. Data again argues that it is entitled to summary judgment because it conducted reasonable investigations in response to the disputes Ford filed with the CRAs, this time focusing on the fact that it will be Ford's burden at trial to establish that I.Q. Data's investigation was unreasonable.

As previously noted, when a court is presented with the question of whether an investigation was reasonable, "[u]nless 'only one conclusion about the conduct's reasonableness is possible,' the question is normally inappropriate for resolution at the summary judgment stage." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1252 (9th Cir. 2022) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)). Many of the disputes Ford filed with the CRAs related to the amount owed on the debt. *See* May 7, 2024, Gulbranson Decl. at ¶¶ 25, 29, 33 (docket no. 123). After receiving and investigating these disputes and concluding that it had reported the correct

ORDER - 3

amount, I.Q. Data would continue to report to the CRAs, by its own admission, incorrect amounts due on the debt. There is, therefore, a factual issue as to whether I.Q. Data's investigations were reasonable. Accordingly, I.Q. Data's motion is DENIED as to Ford's FCRA claim.

### 2. Fair Debt Collections Practices Act

The Court previously declined to grant summary judgment on Ford's FDCPA claims premised on the December 2021 and January 6, 2022, (the "January 2022 letter") letters sent to Ford because I.Q. Data conceded that those letters contained inaccurate information. *See* Order at 7–8, 12 (docket no. 110). In this attempt to obtain summary judgment, I.Q. Data contends that summary judgment is warranted on Ford's FDCPA claim arising from the December 20, 2021, letter because Ford never actually received the letter and, therefore, he lacks standing for this claim. I.Q. Data further argues that it is entitled to summary judgment on the FDCPA claims arising from both the December 2021 letter and the January 2022 letter because, to the extent the letters contained any inaccuracies, such inaccuracies were immaterial and are also subject to the bona fide error defense.

Ford testified that he never received the December 2021 letter. *See* Ford. Tr. at 109:16–110:11, Ex. 24 to Hasson Decl. (docket no. 125 at 3–26). Any harm caused by the December 2021 letter and the inaccurate information within does not provide Ford with standing. *See Tourgeman v. Nelson & Kennard*, 735 F. App'x 340, 341 (9th Cir. 2018) ("An alleged harm based on [debt collection] letters that [the plaintiff] never received, saw, or even knew existed cannot satisfy Article III's concreteness

ORDER - 4

requirement.") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S.Ct. 1540, 1548 (2016) and *Bassett v. ABM Parking Servs. Inc.*, 883 F.3d 776, 783 (9th Cir. 2018)).  Because Ford lacks standing to bring this claim, Ford's FDCPA claim based on the December 2021 letter is DISMISSED.

      I.Q. Data next argues that Ford's remaining FDCPA claim, arising from the January 2022, letter, should be dismissed because the inaccurate information it contained was not material and because, even if the information was material, I.Q. Data is entitled to a bona fide error defense.  Both arguments fail.

      I.Q. Data argues that because the January 2022 letter demanded less than what was due on the day the letter was generated any inaccuracy was immaterial.  Materiality is "not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response."  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) (citing *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)).  Key to a debtor's choice in how to resolve a debt is knowing the amount actually due.  Here, the amount demanded in the January 2022 letter to Ford was different than the amount due on the debt on the day the letter was generated.  If Ford had attempted to pay off his debt based on the January 2022 letter, he would have been unsuccessful because of the inaccurate information.  The January 2022 letter contained inaccurate information that was material to Ford's debt.

      Even though inaccurate information that was material to Ford's debt was in the January 2022 letter, I.Q. Data can avoid liability under the FDCPA by "the limited

ORDER - 5

1  affirmative defense that their conduct was 'not intentional and resulted from a bona fide
2  error notwithstanding the maintenance of procedures reasonably adapted to avoid any
3  such error.'" *Urbina v. Nat'l Bus. Factors Inc.*, 979 F.3d 758, 763 (9th Cir. 2020)
4  (quoting 15 U.S.C. § 1692k(c)). Establishing the bona fide error defense requires a debt
5  collector to show by a preponderance of the evidence that they "(1) violated the FDCPA
6  unintentionally; (2) the violation resulted from a bona fide error; and (3) the debt
7  collector maintained procedures reasonably adapted to avoid the violation." *Id.* (citing 15
8  U.S.C. § 1692k(c) and *McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
9  637 F.3d 939, 948 (9th Cir. 2011)). I.Q. Data argues that it maintained procedures
10 reasonably adapted to avoid any FDCPA violation because (i) it requested an itemization
11 of Ford's debt from Shea Properties, and (ii) it was entitled to rely on those requested
12 documents because of the requirement in the assignment contract between the entities
13 that Shea Properties would only provide accurate information to I.Q. Data. As I.Q. Data
14 correctly observes, reliance on a warranty of accurate information from a creditor does
15 not satisfy a debt collector's obligation to maintain procedures reasonably adapted to
16 avoid FDCPA violations. *See id.* at 763–64. Similarly, a "debt collector's reliance on the
17 creditor's history of providing accurate information was not a procedure reasonably
18 adapted to avoid receiving inaccurate information." *Id.* at 763 (citing *Reichert v. Nat'l*
19 *Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008)). The fact that I.Q. Data did
20 review documents supporting Ford's debt weighs in I.Q. Data's favor. Courts, however,
21 have identified "elaborate procedures" that enable a debt collector to successfully invoke
22 the bona fide error defense including, among other coextensive processes, "'a
23

ORDER - 6

requirement that the creditor verify under oath that *each charge* was accurate,'" and "'an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the [FDCPA].'" *Id.* (emphasis in original) (quoting *Reichert*, 531 F.3d at 1006).  On this record, there are issues of fact as to whether I.Q. Data's processes are the types of "elaborate procedures" needed to successfully invoke the bona fide error defense.  Accordingly, I.Q. Data's motion for summary judgment is DENIED as to Ford's FDCPA claim arising from the January 2022 letter.

### 3. Washington Consumer Protection Act

To establish a violation of the CPA, a private plaintiff must prove: (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred in the conduct of trade or commerce; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-93, 719 P.2d 531, 535-39 (1986).

I.Q. Data argues that Ford's CPA claim should be dismissed because he cannot prove either causation or injury.  Ford contends that I.Q. Data's acts caused him to experience the injuries of emotional distress and a reduced credit score, which has made it more difficult for him to obtain credit and housing.  "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885

ORDER - 7

1    (2009) (citations omitted).  Thus, Ford's emotional distress cannot be the basis for a CPA
2    claim.
3           Ford, however, also contends that I.Q. Data's actions caused his car insurance to
4    increase and forced him to incur expenses in investigating the alleged improper debt
5    collection practices.  See July 2024 Ford Decl. at ¶ 9 (docket no. 142).  It is not clear,
6    however, from the record and the parties' briefing as to whether these harms actually
7    meet the CPA's minimal injury requirement.  See Panag, 166 Wn.2d at 57 ("[T]he injury
8    requirement is met upon proof the plaintiff's 'property interest or money is diminished
9    because of the unlawful conduct even if the expenses caused by the statutory violation are
10   minimal.'" (quoting Mason v. Mortgage Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142
11   (1990))).  Nor is it clear from the record and the parties' briefing whether I.Q. Data's
12   actions caused these harms.  See Indoor Billboard/Washington, Inc. v. Integra Telecom of
13   Wash., Inc., 162 Wn.2d 59, 80–83, 170 P.3d 10 (2007) (rejecting the "argument that
14   [CPA] causation may be established merely by a showing that money was lost").
15   Accordingly, the Court will DEFER a final ruling on Ford's CPA claim against I.Q. Data.
16   The parties shall address these issues in their trial briefs.
17   **B.      Kris Graafstra**
18          Graafstra moves for summary judgment on all remaining claims against him.  As
19   to the FDCPA claims against Graafstra, an employee of a debt collection agency can be
20   personally liable for a FDCPA violation if "they  (1) materially participated in collecting
21   the debt at issue; (2) exercised control over the affairs of the business; (3) were
22   personally involved in the collection of the debt at issue, or (4) were regularly engaged,
23

ORDER - 8

directly or indirectly, in the collection of debts." *Smith v. Levine Leichtman Cap. Partners, Inc.*, 723 F. Supp. 2d 1205, 1214 (N.D. Cal. 2010) (citing *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal. 2008)). It is clear from the record that Graafstra regularly engaged in the collection of debts and was repeatedly and materially involved in I.Q. Data's efforts to collect Ford's debt. What is completely missing from the record, however, is any evidence that Graafstra exercised any amount of control over I.Q. Data's business affairs. Indeed, the evidence in the record shows that Graafstra did not exercise control over I.Q. Data's business affairs and was just an employee. *See* Dec. 13, 2021, Graafstra Decl. (docket no. 75); May 7, 2024, Graafstra Decl. (docket no. 124). Accordingly, Ford's FDCPA claims against Graafstra are DISMISSED.

As to Ford's FCRA claim against Graafstra, there is no evidence in the record that Graafstra furnished any information to CRAs about Ford's debt. Because he never furnished information to CRAs, Graafstra could not have violated the FCRA in relation to Ford's debt. Accordingly, Ford's FCRA claim against Graafstra is DISMISSED.

Finally, Ford asserts a CPA claim against Graafstra. Ford's CPA claim against Graafstra is premised on Graafstra's alleged violations of the FDCPA and FCRA, *i.e.*, that Graafstra's actions were *per se* CPA violations. *See, e.g.*, *Urban v. Mid-Century Ins.*, 79 Wn. App. 798, 805, 905 P.2d 404 (1995) ("The first two elements [of a CPA claim] may be established by showing that the alleged act constitutes a per se unfair trade practice."). Absent Graafstra's alleged violations of the FCRA and FDCPA, there are no facts in the record showing that Graafstra's actions meet the first two prongs of a CPA claim. Accordingly, Ford's CPA claim against Graafstra is DISMISSED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) I.Q. Data International, Inc. and Kris Graafstra's motion for summary judgment, docket no. 122, is GRANTED in part, DENIED in part, and DEFERRED in part.

    (a) The motion is GRANTED as to: (i) Ford's FDCPA claim against I.Q. Data premised on the December 2021 letter and that claim is DISMISSED, (ii) Ford's FCRA claim against Graafstra and that claim is DISMISSED, (iii) Ford's FDCPA claims against Graafstra and those claims are DISMISSED, and (iv) Ford's CPA claim against Graafstra and that claim is DISMISSED.

    (b) The motion is DENIED as to Ford's FDCPA claim against I.Q. Data premised on the January 2022 letter and Ford's FCRA claim against I.Q. Data.

    (c) The motion is DEFERRED as to Ford's CPA claim against I.Q. Data.

(2) Ford is ORDERED to file, no later than August 16, 2024, a detailed, itemized offer of proof as to his actual damages and any proposed damages exhibits that would be presented trial.

(3) The Court MODIFIES the Scheduling Order, docket no. 104, as follows:

| | |
|---|---|
| Agreed Pretrial Order due: | August 23, 2024 |
| Trial Briefs, proposed voir dire questions, and jury instructions due: | August 23, 2024 |

All other dates and deadlines in the Scheduling Order remain unchanged.

(4) The parties shall also address in their trial briefs whether Ford can prove actual damages as to any claim and the CPA injury and causation requirements.

(5) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 29th day of July, 2024.

Thomas S. Zilly
United States District Judge

ORDER - 11